IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **OWNERS INSURANCE COMPANY, for itself and as subrogee of John Soules Foods, Inc., John Soules Enterprises, LLC, and John Soules Foods Alabama, LLC,**<br><br>Plaintiff,<br><br>vs.<br><br>**THE CHARTER OAK FIRE INSURANCE COMPANY,**<br><br>Defendant. | **CIVIL ACTION NO.**<br>**3:24-CV-00649-UJ** |

## COMPLAINT

COMES NOW Plaintiff Owners Insurance Company ("Owners"), both for itself and as subrogee of John Soules Foods, Inc., John Soules Enterprises, LLC, and John Soules Foods Alabama, LLC (subrogors collectively referred to herein as JSF), and for its Complaint against Defendant The Charter Oak Fire Insurance Company ("Charter Oak") states as follows:

### SUMMARY OF ACTION

1. This case arises out of the settlement of a lawsuit filed in the Circuit Court of Chambers County, Alabama styled *Anne Marie Bishop, in her Capacity as the Personal Representative of the Estate of Antonio Patino-Garduno, deceased v.*

1

*John Soules Foods Alabama, LLC, et al.*, CV-2023-900055 (the "Underlying Action").

2. In the Underlying Action, Plaintiff Anne Marie Bishop ("Bishop") asserted claims arising from a September 9, 2021 workplace accident ("the Accident") that resulted in the death of Antonio Patino-Garduno ("Garduno"). Garduno died after falling through a ceiling at a facility owned and operated by JSF in Valley, Alabama. John Soules Foods, Inc., John Soules Enterprises, LLC, and John Soules Foods Alabama, LLC, were all named as defendants in the Underlying Action.

3. Garduno had been employed as a laborer by Quinones Welding, LLC, and was working on a project at the JSF facility at the time of the accident ("the Project"). JSF self-performed the Project at the facility, but subcontracted certain work to Professional Pipe, LLC ("Professional Pipe") as a subcontractor, with Professional Pipe, in turn, subcontracting certain of that work to Quinones Welding, LLC. Professional Pipe was also named as a Defendant in the Underlying Action through a Second Amended Complaint.

4. As an insurer of both Professional Pipe as Named Insured and JSF as an Additional Insured, Plaintiff Owners provided a defense to both Professional Pipe and JSF in the Underlying Action. Charter Oak, a subsidiary of Travelers Insurance Company, had issued a commercial general liability policy for the relevant time

2

period in which JSF (the subrogors of Plaintiff Owners as defined above collectively) were each a Named Insured, and said policy issued by Charter Oak provided coverage to JSF for the Underlying Action.

5. Despite being a primary insurer for JSF as Named Insureds, Charter Oak refused to contribute to settlement of the Underlying Action filed against JSF and Professional Pipe.

6. Owners, cognizant of its duties to both JSF and Professional Pipe, ultimately settled the Underlying Action without contribution from Charter Oak by paying a total of $7,000,000.00 in settlement, tendering the $1,000,000.00 limits of a CGL policy as well as an additional $6,000,000.00 from an umbrella policy, both of which were issued by Owners and provided certain coverage to Professional Pipe, as named insured, and to JSF, as an additional insured. Owners paid these amounts in settlement of the Underlying Action under protest but in order to avoid the risk of a substantial verdict (and potentially an excess verdict) against its insureds (Professional Pipe and JSF) in the Underlying Action.

7. In this lawsuit, Owners seeks relief against Charter Oak including a declaration that its umbrella policy issued to Professional Pipe was excess to Charter Oak's CGL policy naming JSF as named insured or, alternatively, that the Charter Oak CGL policy and Owners' umbrella policy apply to the settlement of the Underlying Action *pro rata*.

8.      Owners further seeks to recover from Charter Oak the $1,000,000.00 limit of the CGL policy issued by Charter Oak to JSF by way of the doctrines of equitable subrogation, contractual subrogation, contribution, and/or unjust enrichment.

## PARTIES, JURISDICTION, AND VENUE

9.      Owners is an Ohio corporation with its principal place of business in Lansing, Michigan.

10.     Upon information and belief, The Charter Oak Fire Insurance Company is a Connecticut corporation with its principal place of business in Hartford, Connecticut. Charter Oak is a subsidiary company of Travelers Insurance Company.

11.     Owners and Charter Oak are each duly registered to do business as insurance companies in the State of Alabama.

12.     Among other relief requested, this action requests relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* and also asserts state law causes of action. As is detailed below, Texas law applies to this action.

13.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1). There is complete diversity of citizenship between Owners and Charter Oak, and the amount in controversy exceeds $75,000.00, exclusive of costs.

14. Venue is proper in the United States District Court for the Middle District of Alabama, Eastern Division, as this insurance dispute arises from events occurring in Chambers County, Alabama.

## THE RELEVANT INSURANCE POLICIES

### Owners' Tailored Protection Policy issued to Professional Pipe

15. Owners issued to Professional Pipe a Tailored Protection Policy, No. 084615-35632074-21, effective April 30, 2021 to April 30, 2022 (the "Owners CGL Policy"). The Tailored Protection Policy included commercial general liability coverage and had a per occurrence limit of $1,000,000.00. A copy of the Owners CGL Policy is attached hereto as Exhibit A.

### Charter Oak CGL Policy Issued to JSF

16. Charter Oak issued to John Soules Foods, Inc. a commercial general liability policy, No. Y-660-8197B533-COF-21, effective April 30, 2021 to April 30, 2022, which identified JSF as the named insured ("Charter Oak CGL Policy"). The Charter Oak CGL Policy provides commercial general liability coverage to JSF for "bodily injury" caused by an occurrence within the policy period, and has a $1,000,000.00 per occurrence limit. A copy of the Charter Oak CGL Policy is attached hereto as Exhibit "B," and shows that it was issued by Charter Oak to John Soules Foods, Inc. in the State of Texas.

### **Owners Umbrella Policy Issued to Professional Pipe**

17. Owners issued an umbrella policy, No. 46-798-177-01, to "Professional Pipe Holding and its Subsidiaries Professional Pipe, LLC" effective April 30, 2021 to April 30, 2022 ("the Owners Umbrella Policy"). The Owners' Umbrella Policy provides $8,000,000.00 dollars of excess coverage per incident to Professional Pipe, with JSF also covered thereunder for certain claims due to its status as an additional insured on the underlying Owners CGL Policy. A copy of the Owners Umbrella Policy is attached hereto as Exhibit "C."

### **BACKGROUND FACTS**

18. The claims in the Underlying Action arose out of the Accident which occurred on September 9, 2021 at JSF's Valley, Alabama facility and which resulted in the death of Garduno. The Complaint filed by Plaintiff in the Underlying Action on or about July 3, 2023 (as well as amendments thereto) included certain allegations against both JSF and Professional Pipe, as well as allegations only against JSF. Plaintiff specifically alleged against both JSF and Professional Pipe counts for negligence/wrongful death, wantonness/wrongful death, negligent hiring, training, and supervision/wrongful death, and wanton hiring, training, and supervision/wrongful death. Plaintiff also asserted a count for premises liability/wrongful death against only JSF. A copy of the Second Amended Complaint filed in the Underlying Action is attached hereto as "Exhibit D."

19. On July 16, 2020, prior to starting work on the Project, Professional Pipe entered into an "Indemnity And Insurance Agreement" with JSF wherein Professional Pipe agreed to indemnify and hold harmless JSF for claims "directly or indirectly relating to, arising from, based on, or connected with any Act or Omission of [Professional Pipe] or [Professional Pipe's Affiliates]." Pursuant to the Indemnity and Insurance Agreement, Professional Pipe also agreed to obtain both commercial general liability insurance and excess liability coverage extending to JSF as an additional insured. The Indemnity and Insurance Agreement provides that it is governed by the law of the State of Texas. A copy of the "Indemnity and Insurance Agreement" is attached hereto as "Exhibit E."

20. Charter Oak tendered the defense and indemnity of its insured, JSF, to Owners on October 18, 2021 shortly after the Accident occurred. A copy of the Travelers/Charter Oaks tender is attached as "Exhibit F." Owners accepted the tender on or about August 10, 2023, after the Underlying Action was filed, but "only with respect to work performed by or on behalf of Professional Pipe LLC for JSF." A copy of the tender acceptance is attached as "Exhibit G."

21. In January of 2024, the parties in the Underlying Action conducted a mediation. Both Owners and Charter Oak were advised previously that the Underlying Action posed a potential multi-million dollar liability exposure for Professional Pipe and JSF.  Still, despite the presence of at least one claim in the

Complaint asserted only against JSF as the facility owner and which included allegations of negligence on the part of JSF, Charter Oak maintained that even though JSF was covered under the Charter Oak CGL policy, that policy would not contribute to any settlement until the limits of both the Owners CGL and Owners Umbrella policies were exhausted. Owners agreed to tender the Owners' CGL Policy limit and ultimately to contribute from its Umbrella Policy toward settlement on the terms discussed below, but Charter Oak refused to contribute its own primary CGL limit despite JSF's liability exposure in the Underlying Action.

22.    Owners, putting the interests of its insureds at the forefront, eventually agreed to settle the matter by offering the one million dollar limits of the Owners CGL Policy and an additional six million dollars from the Owners Umbrella Policy, with no contribution whatsoever from Charter Oak. However, this settlement was made by Owners under protest, as memorialized within the General Release and Settlement Agreement ("the Settlement Agreement") executed by Bishop, the Plaintiff in the Underlying Action. The Settlement Agreement released the defendants in the underlying action and their insurers (including Charter Oak, despite its refusal to contribute), but carved out specifically the right of insurers to file subsequent actions arising "out of the same operative facts to obtain subrogation or reimbursement from any insurance carrier or non-party to this Agreement." Bishop executed the Settlement Agreement on February 15, 2024.

23. Chambers County Circuit Court Judge William I. Whorton entered an order dismissing the action with prejudice pursuant to the parties' Joint Stipulation of Dismissal on February 23, 2024.

## THE RELEVANT POLICY PROVISIONS CONCERNING PRIORITY

### Owners' Tailored Protection Policy
### Issued to Professional Pipe

24. The Owners CGL Policy providing commercial general liability coverage includes additional insured coverage for "bodily injury" which occurs during "on-going operations" caused "in whole or in part, by your acts or omissions; or the acts or omissions of those acting on your behalf" pursuant to Endorsement CG 20 10 04 13 (Additional Insured- Owners, Lessees Or Contractors- Scheduled Person or Organization). "JSF & Its Affiliates" are named in the Policy's Endorsement Schedule as an "additional insured organization."

25. The Owners' CGL Policy provides primary and non-contributory coverage to additional insureds including JSF, and was the first policy in line for payment of indemnity. The full one million dollar limit of the Owners' CGL Policy was paid by Owners in the settlement of the Underlying Action, and is not at issue herein.

### Charter Oak CGL Policy Issued to JSF

26. The Charter Oak CGL Policy issued to JSF provides primary coverage. However, under certain "other insurance" conditions (Section IV-Commercial

General Liability Conditions, 4., a-b), such as when the insured is named as an additional insured on another policy, the Charter Oak policy provides that it should be treated as excess (i.e., an "excess-contingent" policy).

> *a. Primary Insurance*
>
> *This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below, except when Paragraph **d.** below applies*
>
> *b. Excess Insurance*
>
> *(1) This insurance is excess over:*
>
> *(b) Any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance.*

27.     The Charter Oak CGL Policy also provides for contribution by equal shares in the event of a shared loss:

> *c.     Method of Sharing*
>
> *If all other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.*
>
> *If any other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of*

*insurance to the total applicable limits of insurance of all insurers.*

## Owners Umbrella Policy Issued to Professional Pipe

28. The Owners Umbrella Policy issued to Professional Pipe is a "true excess policy" and serves as excess insurance which is only triggered upon exhaustion of all underlying scheduled *and unscheduled* insurance:

*DEFENSE AND SETTLEMENT PAYMENTS*

*....*

*When Underlying Insurance Does Apply To An Incident*

*When underlying insurance does apply to an incident, this policy will not apply to defense, investigation, settlement, or legal expenses, which are covered by* **scheduled underlying insurance or unscheduled underlying insurance**, *but we have the right to associate with the insured in the defense and control of any claim or proceeding for which coverage may be afforded by this policy. In such event, the insured must cooperate fully with us.*

*Each of the following is an insured under this policy to the extent described below:*

*....*

I. *Subject to the terms and conditions of this insurance, any other insured(s) included in the scheduled underlying insurance issued to you and shown in the Declarations,* **but only to the extent that insurance is provided for such other insured(s) in the scheduled underlying insurance**.

29. The Schedule of Underlying Insurance in the Owners Umbrella Policy includes the Owners CGL Policy.

11

30. The term "unscheduled underlying insurance" includes the Charter Oak CGL Policy, as that term is defined by the Owners Umbrella Policy to include:

> *any insurance policies available to any insured (whether primary, excess, excess-contingent or otherwise) except the policies shown in the Schedule of Underlying Insurance. Unscheduled underlying insurance does not include any insurance which is sold as excess of this insurance.*

31. By the below provision, the Owners Umbrella Policy provides that it will pay "ultimate net loss" in excess the limits of scheduled underlying insurance plus the limits of unscheduled underlying insurance:

> *1. The applicable limits of scheduled underlying insurance plus the limits of any unscheduled underlying insurance; or*
>
> *2. The retained limit if an incident is not covered by underlying insurance, but is covered by the terms and conditions of the policy.*

32. The Owners Umbrella Policy also contains the following "Other Insurance" provision:

> *I.   Other Insurance*
>
> *The insurance afforded under this policy shall apply as excess insurance over other collectible insurance (other than insurance applying as excess to our limit of liability) available to the insured and covering ultimate net loss covered by this insurance.*

33. The Owners Umbrella Policy further provides that its terms cannot be modified except by approved endorsement, and provides for Owners to have certain rights to recover monies that Owners pays on behalf of an insured:

> C. *Changes*
>
> *This policy contains all the agreements between you and us or any or our agents relating to this insurance. The terms of this policy may not be changed except by endorsement issued by us.*
>
> ....
>
> M. *Transfer of Rights of Recovery Against Others To Us*
>
> *After making payment under this policy, we have the right to recover to the extent of our payment from anyone responsible. The insured will do whatever is required to transfer this right to us and must do nothing after loss to impair this right. At our request, the insured will bring suit or transfer the right to us and help us enforce this right.*

**COUNT ONE: COVERAGE DETERMINATION UNDER THE FEDERAL DECLARATORY JUDGMENT ACT**

**THE OWNERS UMBRELLA POLICY IS EXCESS TO THE CHARTER OAK CGL POLICY OR, ALTERNATIVELY, REQUIRES THE CHARTER OAK POLICY TO CONTRIBUTE ON A PRO RATA BASIS**

34. Owners incorporates paragraphs 1-33 as if set forth herein.

35. The Owners Umbrella Policy provides that it is not triggered until all other available scheduled *and unscheduled* insurance coverage is exhausted. The Owners Umbrella Policy is a "true excess" policy, following both primary policies and excess-contingent policies for purposes of priority of coverage.

13

36. The Owners Umbrella Policy as a "true excess" policy applies only in excess of the Charter Oak Policy, which is a primary policy, but in this context is an excess-contingent policy also available to JSF.

37. Alternatively, and to the extent the Charter Oak Policy contains the same or similar "other insurance" language and is construed to be at the same level as the Owners Umbrella Policy, the Owners Umbrella Policy applies pro rata with the Charter Oak CGL Policy.

38. There is a bona fide controversy between the parties as to their legal rights, duties, status and liabilities as to their mutual insured, JSF.

39. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201, Owners asks this court to determine Charter Oak's coverage obligations owed to JSF by virtue of the Charter Oak CGL Policy, and the resulting obligations of Charter Oak to reimburse Owners for certain payments made by Owners under the Owners Umbrella Policy and on behalf of JSF in settlement of the Underlying Action.

**COUNT TWO: EQUITABLE AND/OR CONTRACTUAL SUBROGATION**

40. Owners incorporates paragraphs 1- 39 as if set forth herein.

41. Under the contractual subrogation provision of the Owners Umbrella Policy referenced *supra*, Owners has become contractually subrogated to all claims, rights, and demands of payment of JSF against third-parties like Charter Oak.

42. The payment issued by Owners from the Owners Umbrella Policy to settle all claims in the Underlying Action, including claims brought only against JSF (and not Professional Pipe), were not voluntary and were required for the financial protection of both JSF and Professional Pipe. Owners tendered its full limits under the Owners CGL Policy, and offered an additional six million dollars from the Owners Umbrella Policy, in order to settle the Underlying Action, which exposed Professional Pipe and JSF to significant liability. Owners did so despite the fact that the Underlying Action included claims only against JSF which did not implicate Professional Pipe and were covered under the Charter Oak CGL policy.

43. Charter Oak failed to meet its contractual obligations to JSF when it failed to contribute its policy limit under the Charter Oak CGL Policy towards settlement of the Underlying Action after Owners tendered the limit of the Owners CGL Policy.

44. The Charter Oak CGL Policy was second in line after the Owners CGL Policy, as the Owners Umbrella Policy is a true excess policy, applicable only as "excess" behind all primary and excess-contingent policies (like the Charter Oak CGL Policy).

45. Alternatively, Owners enjoys (as subrogee) the rights of JSF as described in the preceding paragraphs against Charter Oak as a matter of equity.

46. Charter Oak had a duty to act as an ordinarily prudent insurer when considering settlement demands and deciding whether to settle or allow a case to proceed to trial and create an unreasonable risk of an excess judgment against JSF.

47. The failure of Charter Oak to cooperate with Owners in good faith to settle the Underlying Action created an unreasonable risk of a multi-million dollar final judgment against JSF, and Charter Oak knew of such risk in light of advice from defense counsel that such a verdict was likely.

48. Under equitable and/or contractual subrogation principles, Owners is entitled to reimbursement from Charter Oak for money paid by Owners under its Umbrella Policy in an amount of $1,000,000.00, representing the limits of the Charter Oak CGL Policy, plus interest and any such other, further, or different relief as determined by the Court.

## COUNT THREE: EQUITABLE CONTRIBUTION

49. Owners incorporates paragraphs 1-48 as if set forth herein

50. The aim of equitable contribution is to apportion an insured loss between two or more insurers who cover the same insurable risk, so that each insurer pays its fair share and one does not profit at the expense of the other(s).

51. Charter Oak's failure to pay its limits under the Charter Oak CGL Policy on behalf of JSF in settlement of the Underlying Action, where both Owners and Charter Oak insured JSF, was not equitable.

52. Under equitable and contribution principles, Owners is entitled to reimbursement from Charter Oak in an amount of $1,000,000.00 or, alternatively, a pro rata contribution from Charter Oak, plus interest and any such other, further, or different relief, as determined by the Court.

## COUNT FOUR: UNJUST ENRICHMENT

53. Owners incorporates paragraphs 1-52 as if set forth herein

54. Owners paid its full $1,000,000.00 limit under its CGL policy and an additional $6,000,000.00 from the Owners Umbrella Policy on behalf of JSF, an insured of both Owners and Charter Oak, in order to achieve a settlement of the Underlying Action and, thereby, a release of JSF from all liability.

55. Charter Oak knowingly accepted and allowed Owners to contribute additional funds toward the settlement from the Owners Umbrella Policy, though Charter Oak was aware that its Charter Oak CGL Policy was triggered and had priority as a primary "excess/contingent" policy over Owners' "true excess" umbrella policy.

56. Charter Oak enjoyed the benefit of Owners' payment, as a release from liability by Plaintiff was achieved by Owners for JSF (and its insurers including Charter Oak), with Charter Oak owing JSF a duty as its insured.

57. Owners has a reasonable expectation to be compensated by Charter Oak for its payment in the amount that Charter Oak was unjustly enriched, which amount

is the $1,000,000.000 limit of the Charter Oak CGL Policy or, alteratively, an amount to be determined by the Court.

## REQUEST FOR RELIEF

WHEREFORE, Owners requests from this Court as follows:

1. A Declaration that the Charter Oak CGL Policy had priority over the Owners Umbrella Policy; and that Charter Oak improperly and wrongly refused to tender its limits in contribution to the settlement of the Underlying Action on behalf of the mutual insured, JSF; or, alternatively, that Charter Oak was required to contribute to the settlement of the Underlying Action on a pro rata basis.

2. Owners also demands from Charter Oak reimbursement pursuant to the doctrine of equitable/contractual subrogation; equitable contribution; and/or the doctrine of unjust enrichment, any or all of which entitle Owners to a judgment for reimbursement from Charter Oak in the amount of $1,000,000.00, plus interest an amount to be determined by the Court; and any such other, further, and different relief to which Owners may be entitled.

DATED this 17th day of October, 2024.

Respectfully Submitted,

*s/ Taylor Barr Johnson*
Taylor Barr Johnson     (ASB-8851-Y78B)
Michael D. Strasavich   (ASB-9557-S81M)

**OF COUNSEL**:
**BURR & FORMAN LLP**
11 N. Water Street, Suite 22200
Mobile, Alabama 36602
Tel:   (251) 344-5151
Fax:   (251) 344-9696
Email: tjohnson@burr.com
          mstrasavich@burr.com


**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL AS FOLLOWS:**

The Charter Oak Fire Insurance Company
c/o Corporation Service Company, Inc.
(its Registered Agent for Service of Process in the State of Alabama)
641 South Lawrence Street
Montgomery, Alabama 36104